Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| SERGEI DOLINSKY, OLGA DOLINSKY, JAIME BAREA FERNANDEZ, MARTA MORA ESTRELLA, KEVIN MARTINEZ DIAZ, FRANCES NIEVES CASASNOVAS<br>Apelantes<br><br>v.<br><br>EDGAR TORRES MORALES, FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos<br>Apelados | TA2025AP00031 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Núm. AG2024CV02200<br><br>Sobre: Injunction Preliminar y Permanente (Construcción Ilegal; Art. 14.1 Ley 161 de 1 de diciembre de 2009) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparecen los señores Sergei Dolinsky, Olga Dolinsky, Jaime Barea Fernández, Marta Mora Estrella, Kevin Martínez Díaz y Frances Nieves Casanovas (Sr. Dolinsky, Sra. Dolinsky, Sr. Barea Fernández, Sra. Mora Estrella, Sr. Martínez Díaz, Sra. Nieves Casanovas, o, en conjunto, parte apelante) mediante recurso de *apelación*, solicitando que revoquemos la *Sentencia* emitida el 20 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI). Mediante dicho dictamen, el TPI declaró *Ha Lugar* una *Moción de Desestimación* presentada por el señor Edgar Torres Morales (Sr. Torres Morales o parte apelada).

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

## I. Resumen del tracto procesal

El caso de epígrafe tuvo su génesis el 23 de diciembre de 2024, cuando la parte apelante presentó una *Demanda* de injunction preliminar y permanente contra el apelado, al amparo del Artículo 14.1 de la Ley Núm. 161-2009, según enmendada, mejor conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico* (Ley Núm. 161-2009). Alegaron que son titulares registrales y/o residentes de ciertos predios de terreno en el Barrio Calvache del Municipio de Rincón. Relataron que el apelado, dueño de uno de los referidos predios de terreno, llevó a cabo diversas obras de construcción ilegales, las cuales alegadamente son:

> a. Construcción de un muro de concreto y bloques en la parte frontal de la propiedad, que da hacia calle de acceso [...];
>
> b. Movimiento de terreno para construcción de muro de concreto mencionado en el inciso "a" anterior [...];
>
> c. Construcción de un pedestal en concreto para contador de servicio de energía eléctrica [...];
>
> d. Construcción de una estructura en madera bajo la cual albergan un arrastre tipo "camper tráiler". [...]
>
> e. Exacción de terreno y excavación de una trinchera en la zona marítimo terrestre para algún propósito el cual se desconoce, sin los debidos permisos de OGPE y ni autorización del Departamento de Recursos Naturales de PR (DRNA) que son los custodios de la zona marítimo terrestre. [...][1]

Adujeron que el apelado no había colocado a la fecha de la presentación de la *Demanda,* algún rótulo o aviso del cual surgiese el número de permiso o acreditase que la obra que se estaba llevando a cabo fuere legal. Aseveraron de igual forma, que el apelado continuaba realizando las obras de construcción. Solicitaron al TPI que: 1) concediera un *injunction* al amparo de la Ley Núm. 161-2009; 2) ordenase al apelado la paralización, y el cese y desista de toda y cualquier construcción ilegal; 2) ordenase la demolición de toda y cualquier construcción ilegal efectuada por el apelado; 3) que le impusiera al apelado una suma razonable por concepto de costas, gastos y honorarios de abogado a favor de los co-

---

[1] Apéndice del recurso de *apelación*, entrada núm. 1, expediente electrónico del caso en SUMAC.

demandantes; y que 4) encontrara al apelado incurso en temeridad. Acompañaron su *Demanda* con varias imágenes de las construcciones.

Varios días después, el 27 de diciembre de 2024, el TPI emitió una *Orden y Citación* en la que requirió al apelado asistir a una vista de Injunction Preliminar y Permanente pautada para el 31 de enero de 2025. En esa misma fecha, la Secretaria Regional expidió los mandamientos correspondientes. El 27 de enero de 2025, los apelantes acreditaron al TPI el diligenciamiento del emplazamiento y de la citación. En respuesta, el 30 de enero de 2025, el Sr. Torres Morales presentó una *Moción de Desestimación*. En esta esgrimió que, los apelantes no alegaron de manera específica y clara cuál era el daño o lesión particular de las construcciones, sino que formularon alegaciones hipotéticas y especulativas. Añadió que, solamente se limitaron a alegar en la *Demanda* que las propiedades de las partes estaban adyacentes y que se estaban construyendo ciertas obras sin los debidos permisos. Solicitó al foro recurrido que desestimara la causa de acción, en virtud de la Regla 10.2 de Procedimiento Civil, toda vez que los apelantes carecían de legitimación activa. Esbozó que fallaron en establecer cuál fue el interés propietario o personal que se vio adversamente afectado con las construcciones, conforme a lo establecido en el Artículo 14.1 de la Ley Núm. 161-2009.

Así las cosas, se celebró la vista de Injunction Preliminar y Permanente. Se discutieron los planteamientos de los apelantes y la solicitud de desestimación del apelado. El TPI concedió un receso para que las partes dialogaran. No obstante, no llegaron a algún acuerdo. El representante legal del apelado sostuvo que los apelantes no tenían legitimación activa conforme al precitado Artículo 14.1 y conforme a lo resuelto en *Díaz Vázquez v. Colón Peña, infra,* dado que no alegaron de manera específica en qué consistía el interés propietario o individual adversamente afectado. En respuesta, la representación legal de los apelantes adujo que el promovente de la causa de acción en cuestión solo

debía establecer la existencia de algún estatuto o reglamento que regule el uso o actividad denunciada, y que el apelado estaba realizando tal actividad. En ese sentido, argumentó que no era necesario establecer la existencia de daños. Aseveró que el Sr. Dolinsky es el dueño de un predio colindante con la finca del Sr. Torres Morales. Asimismo, solicitó al foro de instancia que le permitiese enmendar la demanda, en caso de que entendiese que no debía comenzar el desfile de prueba. En desacuerdo, el representante legal del apelado arguyó que permitir una enmienda a la demanda era contrario al procedimiento sumario.

Atendidas las posturas de las partes, el TPI concluyó que las alegaciones de los apelantes no señalaron algún daño por interés propietario o personal. Aclaró que el injunction estatutario requiere que de las alegaciones de la demanda se desprenda cuál es el daño sufrido por la parte demandante. **En consecuencia, indicó que estaría desestimando la petición, no sin antes concederle un término a los apelantes para que se expresaran por escrito**. (Énfasis provisto). Ante tal escenario, el TPI se trasladó al Municipio de Rincón para llevar a cabo una vista ocular. En ella, el representante legal de los apelantes adujo que la propiedad que se encontraba frente al predio en cuestión le pertenecía al Sr. Martínez Díaz. Añadió que las propiedades ubicadas al lado del predio pertenecían al Sr. Dolinsky; que había un camino de acceso municipal hacia la playa que había sido rellenado por el apelado. Aseveró que había un tubo que salía del trailer y las aguas usadas eran alegadamente depositadas en la tierra. Adujo además que, había una Escritura Pública de la que surgía que las construcciones en cualquiera de estos predios debían ser en cemento. Indicó de igual forma que el Sr. Torres Morales había instalado un pedestal de luz sin contador ni permisos de conexión eléctrica.

En respuesta, el representante legal del apelado sostuvo que los apelantes no habían logrado demostrar el daño a algún interés propietario o individual. Ante tal señalamiento, la representación legal de los apelantes

argumentó que el interés de la parte apelante se vio afectado en la medida en que se le impidió el acceso a la playa y la altura del muro afectaba la visibilidad del Sr. Martínez Díaz, por lo que había motivos para que el TPI viera la controversia. La parte apelante insistió en la petición de enmienda a la demanda, y solicitó un término para realizarla.

Posteriormente, el 19 de febrero de 2025, los apelantes presentaron una *Oposición a Moción de Desestimación*. Manifestaron, en resumen, que: 1) de las alegaciones de la *Demanda* se desprendía que son colindantes del solar del apelado, en el que realizó varias construcciones ilegales; 2) que las obras obstruyen la visibilidad; 3) que invadieron el camino de acceso público a la playa; y 4) que el apelante hizo una trinchera en la zona marítimo terrestre **que pudiese afectar** al predio colindante del Sr. Dolinsky. Por lo tanto, solicitaron al TPI que declarase *No Ha Lugar* la solicitud de desestimación presentada por el apelado. También peticionaron al foro recurrido que permitiese la enmienda a la *Demanda*.

A raíz de lo anteriormente descrito, el 22 de febrero de 2025, el TPI emitió una *Resolución y Orden* en la que, luego de evaluados los planteamientos de las partes y de haberse llevado a cabo la vista ocular, señaló una vista evidenciaria para el 13 de marzo de 2025. Superados varios incidentes procesales, el 12 de marzo de 2025, el apelado presentó una moción *Para Reiterar que se debe Desestimar la Demanda y que la Vista Evidenciaria es Improcedente en Derecho*. En síntesis, adujo que: 1) el TPI debía desestimar la demanda porque los apelantes tenían hasta el 4 de marzo de 2025 para presentar prueba y no lo hicieron; 2) conforme al Artículo 14.1 de la Ley Núm. 161-2009, el foro recurrido tenía un término de veinte (20) días para dictar sentencia luego de celebrada la vista del 31 de enero de 2025; y 3) era un error realizar una vista evidenciaría, toda vez que los apelantes carecían de legitimación activa, según requerido por el Artículo 14.1 de la Ley Núm. 161-2009, al no haber señalado el interés propietario o personal que se vio afectado.

El 13 de marzo de 2025 se celebró la vista evidenciaria. El TPI le concedió un término de veinte (20) días para que los apelantes presentasen su oposición a la segunda solicitud de desestimación radicada por el apelado. También le concedió un término de cinco (5) días para enmendar la demanda. En suma, ambas partes reiteraron sus respectivos planteamientos, los cuales ya hemos discutido a cabalidad. El TPI, a solicitud de los apelantes, señaló la vista evidenciaria para el 10 de junio de 2025 y advirtió que si el asunto se puede resolver sin vista, la dejaría sin efecto. Entonces, el 18 de marzo de 2025, los apelantes presentaron una *Demanda Enmendada*. Mantuvieron los planteamientos esbozados en la *Demanda* original y añadieron que sus intereses se han visto adversamente afectados por las actividades de construcción ilegal llevadas a cabo por el Sr. Torres Morales.

Alegaron en síntesis, que las construcciones realizadas tenían los siguientes impactos: 1) impacto ambiental a los apelantes como vecinos; 2) impacto directo al flujo vehicular hacia la propiedad del Sr. Martínez Díaz; 3) obstrucción de visibilidad de las propiedades de los apelantes hacia la playa; 4) contribución a la erosión de la costa; y 5) la devaluación de las propiedades colindantes a raíz de la construcción, las cuales contravienen las restricciones voluntarias que gravan la propiedad. La *Demanda Enmendada* estuvo acompañada, entre otros, de un estudio de título. Luego, el 25 de marzo de 2025, presentaron una *Oposición a la Segunda Solicitud de Desestimación Presentada por la Parte Demandada*, en la cual realizaron los mismos argumentos que ya hemos descrito. El 27 de marzo de 2025, el apelado presentó una *Oposición a la Enmienda a la Demanda de Interdicto*. En ella sostuvo su postura, la cual ya hemos discutido también. La referida moción fue declarada *No Ha Lugar* por el TPI el 28 de marzo de 2025.

Es así como, el 20 de mayo de 2025, el foro recurrido emitió la *Sentencia* que aquí se impugna, a través de la cual declaró *Ha Lugar* la

moción de desestimación presentada por el apelado. En ella, el TPI realizó un recuento de los hechos esbozados. Dispuso que, para que se concediera un remedio en virtud del Artículo 14.1 de la Ley Núm. 161-2009, los apelantes debían establecer que tenían un interés propietario o personal que podría verse afectado de manera adversa y establecer que el apelado inició una construcción sin los permisos requeridos. Como consecuencia, concluyó que los apelantes carecían de una causa de acción al amparo del estatuto precitado por falta de legitimación activa. Determinó, particularmente, lo siguiente:

> En primer lugar, es preciso reiterar que el propósito del artículo 14.1 de la Ley Núm. 161, supra, es **hacer viable la efectividad de las leyes y los reglamentos de planificación y que el remedio que provee es independiente del injunction tradicional. Dicha disposición no provee como remedio la paralización de obras que violentan las condiciones restrictivas de uso y construcción y gravan ciertas propiedades.** Por tanto, si existen o no condiciones restrictivas que garantizan la visibilidad hacia la playa o prohíben las construcciones de estructuras en madera, no es una controversia que compete atender a este tribunal en el recurso ante su consideración.

> **Más aún, este tribunal emitió resolución ordenando a la parte demandante la presentación de la prueba antes del 4 de marzo de 2025. A tales efectos, en la vista del 13 de marzo de 2025, la representación legal de la parte demandante hizo constar que, al presentar la demanda, presentó fotografías y que el resto de la prueba sería testifical. En este sentido, la parte demandante no tiene disponible la escritura a la que hiciera referencia durante la vista ocular para establecer que, en efecto, existían condiciones restrictivas en los predios objeto de controversia que obligaban a las personas que fueran dueñas de estos a construir estructuras en cemento o a no obstruir la visibilidad hacia la playa.**

> Habiendo concluido de esta forma, **resulta evidente que no basta con que la parte demandante establezca que la construcción de la parte demandada interrumpiría su visibilidad hacia la playa para ordenar la paralización del muro en concreto. Este hecho no demuestra que posee un interés propietario o personal que podría verse adversamente afectado y, en consecuencia, que tiene legitimación activa para presentar una acción judicial al amparo del artículo 14.1 de la Ley Núm. 161, supra. Ello en vista de que, dicho interés propietario o personal que la parte demandante alega se vería adversamente afectado, no es uno para el cual se justifique la concesión de un remedio al amparo del artículo 14.1 de la Ley Núm. 161,**

**supra; sino que, ante tal escenario, la parte demandante tiene disponible el injunction tradicional.**

Cabe señalar que, con el beneficio de la vista ocular, el tribunal puede concluir que las alegaciones incluidas en la demanda enmendada sobre el muro en concreto son especulativas, en cuanto al impacto y flujo vehicular.

En segundo lugar, es preciso reiterar, además, que **la parte que presente una acción judicial al amparo del artículo 14.1 de la Ley Núm. 161, supra, tiene legitimación activa estatutaria cuando posee un interés propietario o personal que podría verse adversamente afectado si la parte demandada, entre otros escenarios, inició o construyó una obra sin contar con los permisos correspondientes.** Dicho esto, si la parte demandante ha invadido terreno de camino municipal al construir una verja contigua a dicho camino, tampoco es una controversia que compete atender a este tribunal en el recurso ante su consideración; pues no es el Municipio de Rincón quien comparece como parte demandante. Corresponde a la parte demandante establecer cuáles son los intereses propietarios y personales que le afectan a esta y no a otras personas que no han comparecido como parte en el caso de epígrafe.

Así mismo, el tribunal reitera que, si bien la lesión de una persona que acude ante un foro judicial se puede basar en consideraciones ambientales, esto no quiere decir que la puerta esté abierta de par en par para la consideración de cualquier caso que desee incoar cualquier persona en alegada protección de una política pública. De modo que, cualquier planteamiento relacionado al impacto ambiental a los fines de establecer la legitimación de la parte demandante para presentar el recurso ante la consideración de este tribunal resulta inmeritorio. Este tribunal debe concluir de igual forma en cuanto a los planteamientos relacionados a la zona marítimos terrestre.

Finalmente, sobre la construcción del pedestal en concreto para un contador de servicio de energía eléctrica, coincidimos con la postura de la parte demandada de que la demanda no incluye alegaciones suficientes para establecer que, de alguna forma, tal conducta sea contraria a las disposiciones de las leyes y reglamentos de planificación ni cómo afecta los derechos propietarios o personales de la parte demandada.[2] (Énfasis provisto).

Inconformes, los apelantes presentaron ante nos un recurso de apelación, señalando la comisión de los siguientes errores:

Primer Señalamiento de Error: Erró el TPI dictar Sentencia desestimando la Demanda Enmendada de Injunction estatutario, acogiendo la solicitud de desestimación presentada por la parte demandada-apelada, sin celebrar una vista de injunction, conforme requiere el mandato legislativo establecido en el Art. 14.1 de la Ley 161, 2009.

---

[2] Apéndice del recurso de *apelación*, entrada núm. 48, expediente electrónico del caso en SUMAC.

Segundo Señalamiento de Error: Erró el TPI al no celebrar una vista de injuction estatuario, según requiere el Art. 14.1 de la Ley 161, 2009 y al proceder a desestimar la demanda enmendada de autos sin haberse desfilado prueba.

Tercer Señalamiento de Error: Erró el TPI al privar a los demandantes-apelantes de su día en corte, de presentar prueba en una vista en sus méritos y de que su reclamo se atendiera en sus méritos, los cuales son requisitos del debido proceso de ley.

El 9 de julio de 2025, el Sr. Torres Morales presentó su *Alegato del Apelado*. Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II. Exposición de Derecho

### A. Ley 161-2009

La Ley Núm. 161-2009 fue promulgada para establecer el nuevo marco legal y administrativo que habría de guiar la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del Gobierno de Puerto Rico. Su objetivo es transformar el sistema de permisos de Puerto Rico de modo que el mismo sea uno más transparente, ágil, confiable y eficiente. Exposición de Motivos de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009 (23 LPRA sec. 9011 *et seq.*). Mediante dicha ley se creó la OGPe, entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos. Art. 2.5 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, *supra* (23 LPRA sec. 9012d).

La Ley 161-2009, en su Capítulo XIV, permite la presentación de recursos extraordinarios **ante el Tribunal de Primera Instancia a los fines de solicitar la paralización y demolición de obras construidas sin permisos. Además, regula lo concerniente a la celebración de vistas.** A esos efectos, el Art. 14.1 de la Ley 161-2009, dispone lo siguiente:

> *Artículo 14.1. — Recursos extraordinarios para solicitar revocación de permisos, paralización de obras o usos no autorizados, demolición de obras.*

*La Junta de Planificación, así como cualquier Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público **o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado**, podrá presentar una acción de **injunction,** mandamus, sentencia declaratoria, **o cualquier otra acción adecuada para solicitar***: 1) **la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa***; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.*

*Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y **cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.***

*El Tribunal de Primera Instancia **deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.***

*En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.*

*El Tribunal impondrá honorarios de abogados contra la parte que presenta el recurso bajo este Artículo si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley. Los honorarios de abogados bajo este Artículo será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el Tribunal entienda que no es aplicable la presente imposición de honorarios de abogados, tendrá que así explicarlo en su dictamen con los fundamentos para ello. Las revisiones de los dictámenes bajo este Artículo ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante esta Ley y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo.* (Énfasis nuestro). Art. 14.1 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, *supra* (23 LPRA sec. 9024).

**B. Injunction Estatutario**

El *injunction* es un remedio *in personam* dirigido a la parte demandada y no contra sus bienes ni contra la cuestión objeto del interdicto. *Díaz Vázquez et al. v. Colón Peña et al,* 214 DPR 1135 (2024). Constituye un recurso extraordinario procedente del sistema anglosajón —conocido también como el sistema de equidad— e incorporado a nuestro ordenamiento jurídico en virtud de legislación. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, supra, pág. 588.

Actualmente el Código de Enjuiciamiento Civil y la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, rigen los aspectos sustantivos y procesales del *injunction. Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 318-319 (2008). El Artículo 675 del Código de Enjuiciamiento Civil, 32 LPRA 3421, en particular define el *injunction* de la siguiente manera:

> El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.

Este recurso se caracteriza por su perentoriedad dirigida a evitar la producción de un daño inminente o a restablecer el régimen de ley quebrantado por una conducta opresiva, ilegal o violenta. *Díaz Vázquez et al. v. Colón Peña et al,* supra; *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 366 (2001). A esos fines, existen tres modalidades de este remedio: (1) el entredicho provisional, (2) el *injunction* preliminar, y (3) el *injunction* permanente. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474, 486 (2014). En el presente caso nos limitaremos a abordar estas dos últimas categorías. Veamos.

Al decidir si expide un *injunction* preliminar, el tribunal deberá evaluar los siguientes criterios fijados en la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3:

1. La naturaleza del daño a que está expuesto la parte peticionaria;

2. la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;

3. la probabilidad de que la parte promovente prevalezca;

4. la probabilidad de que la causa se torne en académica;

5. el impacto sobre el interés público del remedio que se solicita, y

6. la diligencia y la buena fe con que ha obrado la parte peticionari[a].

La expedición de este remedio descansa en la sana discreción judicial ejercida al ponderar las necesidades y los intereses de las partes involucradas en la controversia. *Mun. de Ponce v. Gobernador*, 136 DPR 776, 790-791 (1994). Ello, pues, el propósito fundamental del *injunction* preliminar o *pendente lite* es: (1) mantener el *status quo* hasta que se celebre el juicio; (2) impedir que la situación se torne académica o; (3) evitar que se ocasionen daños mayores mientras perdura el litigio. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 41 (2010); *Rullán v. Fas Alzamora,* 166 DPR 742, 764 (2006).

En cambio, el *injunction* amerita considerar los siguientes criterios: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado, y (4) el balance de equidades. *Plaza Las Américas v. N & H*, 166 DPR 631, 644 (2005). Ahora bien, procede su concesión si la parte que lo solicita demuestra que no tiene ningún otro remedio en ley para evitar un daño. *Mun. de Loíza v. Sucns. Suárez et al.*, 154 DPR 333, 367 (2001). Véase, también, *Senado de PR v. ELA,* 203 DPR 62, 72 (2019). En ese sentido, es un daño irreparable aquel que: (1) no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles; (2) no puede ser apreciado con certeza; (3) ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley. *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 681 (1997).

Sobre este último requisito, el Tribunal Supremo de Puerto Rico emitió el siguiente pronunciamiento al discutir el *injunction* permanente:

> Intrínseca a la naturaleza del *injunction* es su necesidad como medio para prevenir perjuicios inminentes o daños irreparables. Este tipo de acción se dirige contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos. Importantemente, hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente. *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR __ (2024) (citas omitidas).

### C. Legitimación Activa

*Los pleitos se deben tramitar por la persona que por ley tenga el derecho que se reclama, es decir, la parte legítima.* Hernández Colón, *Derecho Procesal Civil*, 6ta ed., LexisNexis, San Juan, 2017, pág. 118. Quiere decir que como parte demandante *debe figurar aquélla a favor de quién el derecho material o sustantivo establezca el derecho objeto de la demanda. Íd.* En específico, la Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1, establece lo que sigue sobre la legitimación activa:

> Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquella para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. No se desestimará un pleito por razón de no haberse tramitado a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la presentación del pleito, o se una al mismo, o se sustituya en lugar de la parte promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiese incoado por la persona con derecho.

En consonancia, la doctrina de la legitimación activa o *standing* limita quiénes pueden acudir a los tribunales a vindicar sus derechos. Se trata de una de las vertientes del principio de justiciabilidad mediante la cual se determina quién puede ser parte en una controversia ante nuestros tribunales. *Lozada Tirado et al., v. Testigos Jehová*, 177 DPR 893 (2010); *Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). Además, dicha doctrina ha sido definida como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal,

realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017).

A su vez, el principio de justiciabilidad surge atendiendo consideraciones de índole constitucional y de autolimitación adjudicativa, que exige tener ante sí un caso y controversias real antes de ejercer el poder judicial. *Ortiz v. Panel F.E.I.*, 155 DPR 219, 251 (2001); *E.L.A. v. Aguayo*, 80 DPR 552, 559 (1958). De este modo, nuestro ordenamiento exige que las partes tengan legitimación activa para iniciar un pleito. *Ramos, Méndez v. García García, supra*, pág. 394. Una parte cuenta con legitimación activa para instar una acción, cuando concurren los siguientes requisitos: (1) **haber sufrido un daño claro y palpable**; (2) **que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético**; (3) **una conexión entre el daño sufrido y la causa de acción ejercitada**, y (4) **que la causa de acción surja bajo el palio de la Constitución o de una ley**. *Ramos, Méndez v. García García, supra*, págs. 394-395; *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 943 (2011). (Énfasis provisto).

En definitiva, no será justiciable aquella controversia en la que, entre otras razones, una de las partes no tenga legitimación activa. *Ramos, Méndez v. García García, supra*; *Torres Montalvo v. Gobernador ELA*, 194 DPR 760 (2016).

Por otra parte, como quedó visto, la Regla 15.1 de Procedimiento Civil, *supra*, también dispone que si el demandante no es la persona que por ley tiene la capacidad para exigir el derecho que se reclama, ello no conlleva automáticamente la desestimación del pleito. Sobre lo cual, la misma regla exige que, luego de levantarse la objeción, el tribunal le conceda un término razonable a la persona con derecho para que comparezca al pleito, es decir, que se acumule al pleito o se sustituya en lugar del demandante que originalmente radicó.

### III. Aplicación del Derecho a los Hechos

*a.*

Los errores señalados por los apelantes son susceptibles de discusión conjunta, por lo que así obraremos. En suma, a través de estos se impugna la determinación del TPI de acoger la *Moción de Desestimación* del apelado, favoreciendo la teoría legal sobre la falta de legitimación activa, toda vez que los apelantes no lograron acreditar que tenían un interés propietario o personal que se vio adversamente afectado, de conformidad con el Artículo 14.1 de la Ley Núm. 161-2009, *supra.* Se refuta en particular la falta de la celebración de una vista de injunction, según requerido por el precitado estatuto, sin haberle concedido la oportunidad de desfilar prueba. Añaden los apelantes que esta actuación del foro recurrido los privó de su día en corte, lo cual es requisito del debido proceso de ley. No nos convence su postura. Veamos.

*b.*

Según ya dijimos, La Ley Núm. 161-2009 fue promulgada para establecer el nuevo marco legal y administrativo que habría de regular la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del Gobierno de Puerto Rico. Exposición de Motivos de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, *supra.* En lo que nos concierne, el Artículo 14.1 del cuerpo estatutario en discusión establece que una persona privada, natural o jurídica, **que tenga un interés propietario o personal que pueda verse adversamente afectado**, podrá presentar un injunction para, entre otros, solicitar la paralización o demolición de obras iniciadas sin los permisos correspondientes. Art. 14.1 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, *supra.* En los procesos judiciales que se presenten al amparo de esta disposición legal, el TPI deberá celebrar una vista dentro de diez (10) días naturales de haberse radicado el recurso. *Íd.*

Además, el foro de instancia deberá dictar sentencia en un término no mayor de veinte (20) días naturales de haberse celebrado dicha vista. *Íd.*

Por otra parte, la legitimación activa es una rama o vertiente del principio de justiciabilidad. Así, la doctrina de la legitimación activa o *standing* limita quiénes pueden acudir a los tribunales a vindicar sus derechos. Cónsono con lo anterior, dicha doctrina ha sido definida como la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante. *Ramos, Méndez v. García García, supra,* pág. 394; *Bhatia Gautier v. Gobernador, supra.* Para que una parte tenga legitimación activa, debe cumplir con los siguientes requisitos: (1) **haber sufrido un daño claro y palpable**; (2) **que el referido daño sea real, inmediato y preciso, y no abstracto o hipotético**; (3) **una conexión entre el daño sufrido y la causa de acción ejercitada**, y (4) **que la causa de acción surja bajo el palio de la Constitución o de una ley**. *Ramos, Méndez v. García García, supra*, págs. 394-395; *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 943. (Énfasis provisto).

Se desprende del expediente ante nuestra consideración que los apelantes tuvieron amplias oportunidades para presentar prueba ante el TPI sobre el alegado daño sufrido a causa de las obras supuestamente ilegales realizadas por el apelado. Inclusive, el foro recurrido fue sumamente generoso con las partes, particularmente la parte apelante, al haber señalado varias vistas para escuchar sus respectivas posturas. En la primera ellas, la cual fue una vista de Injunction Preliminar y Permanente, luego de haberles escuchado, aclaró que estaría desestimando el pleito, pero **no sin antes concederle un término a los apelantes para que se expresaran por escrito.** A esto añadimos que, ese mismo día, el TPI se trasladó al Municipio de Rincón para llevar a cabo una vista ocular. Estando allí, el foro de instancia escuchó nuevamente los planteamientos

de las partes. Ante esto, el foro recurrido señaló **otra vista**, esta vez evidenciaria. En la referida vista, el foro apelado **le concedió a la parte apelante un término de veinte (20) días para que se opusiere a la segunda solicitud de desestimación presentada por el apelado. Le concedió también a esta misma parte un término de cinco (5) días para que presentasen su *Demanda Enmendada.***

Cuando los apelantes presentaron su demanda enmendada, la acompañaron con un estudio de título sobre la finca del apelado. Sin embargo, no presentaron la escritura a la que hicieron referencia. No cabe duda que el TPI, no solamente llevó a cabo la vista de injunction requerida por la legislación en cuestión, sino que le proveyó vastas oportunidades a los apelantes para que presentasen prueba y acreditaran su causa de acción. No lo hicieron. Por lo tanto, concluimos que el TPI no cometió los errores señalados. Estamos de acuerdo con el foro recurrido en su determinación de falta de legitimación activa. No hubo violación alguna al debido proceso de ley.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, se *confirma* la *Sentencia* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. La jueza Santiago Calderón disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones